RED RIVER LEVEE DISTRICT No. 1 v. RUSSELL.

Opinion delivered November 23, 1908.

LEVEE DISTRICT—POWERS OF PRESIDENT—Under act of March 16, 1905, § § 16, 33, providing that the president of the Red River Levee District No. 1 may, in case of emergency, "take such action in the case as may best promote the interests of the district," and that "for such emergency service all persons serving thereon shall be paid at such rate as may be fixed by such board," the president of the district was authorized, in an emergency, to employ men to strengthen an old levee behind which the new one was being constructed, in order to protect the latter.

Appeal from Lafayette Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Henry Moore, Jr.,* for appellant.

HILL, C. J. This is a suit by J. C. & W. H. Russell against Red River Levee District No. 1, seeking to recover for certain services rendered to said Levee District; and they recovered judgment for $1,000, and the Levee District has appealed.

An act of the General Assembly became effective March 16, 1905, which created Red River Levee District No. 1, described its boundaries, named its directors and conferred powers and duties upon them and their officers. Acts of 1905, p. 231.

The 16th section of the act provided that at a regular annual meeting the directors should decide on the amount of work for that year, and the president should contract for the construction and performance of the work, letting it to the lowest responsible bidder after public advertisement, and other details; and contained this proviso: "Provided, further, that in case of a break in the levee, or a break threatened by caving bank, or other cause demanding immediate attention, the president of said board may, and is hereby authorized to, take such action in the case as may best protect the interests of the district."

Section 33 authorizes any member of the board of directors, or any person appointed by said board, in case of threatened danger or urgent necessity, to order out all, or as many as may be necessary, of the persons living within the levee district who are liable for road duty under existing laws, and cause them to work on the levees. "For such emergency service all persons serving thereon shall be paid by the board at such rate as may be fixed by said board."

The plaintiff's testimony tended to prove these facts: That prior to the passage of the act by the General Assembly above referred to there was an old string levee on his and other places which protected their plantations from overflow. This levee was between the river and the levee being constructed by the Levee District. High water was coming on, and an overflow was expected, and the Russells were directed by the president of the Levee Board to hold their private levees regardless of expense. This was done in order to protect the new levees and the country sought to be protected by the levees then in process of construction from the overflow then impending. The request came direct from the president of the Levee Board, and the work done was done under the immediate supervision of the chief engineer of the Levee District. The chief engineer laid out the levees, and had charge of their construction, and appeared to be in full authority of the work being done thereupon, and assumed direction of the work on the private levees which was directed by the pres-

ident.  The vice president of the levee district controlled or
owned a plantation adjoining the Russells, and similar work
was done on the private levee on his place and others.  The cost
of the work done on the private levees is the subject-matter of
this suit.  This work was done upon the Joella and Dickson
plantations.  On the Joella plantation the district had partially
constructed a levee, but had not built any levee on the Dixon
plantation.  The levee district had not acquired any right of way
upon either plantation, but did so after this work was done.  The
private levees reinforced by the work done upon them held back
the overflow, and protected the new levees and the country sought
to be protected by them.  Payments were made for some work
done on private levees by the levee board.

Much of the testimony went to the details of the bills ren-
dered and services performed, and the reasonableness of the
same.  On the other side, the testimony contradicted the Russells
in most of the material matters.

The court gave, at the instance of the plaintiff, instructions
numbered two, three and four, and at the instance of the defend-
ant instructions numbered two, four and five, which will be found
in the footnote.*

The testimony of one of the plaintiffs is attacked, and it is
said that no credit should be given to his evidence, for the rea-
sons set forth in the argument.  But this was a matter exclusively
for the consideration of the jury.  As far as this court is con-
cerned with it is to test its sufficiency, if true, to sustain the ver-

---

*The following instructions were given at plaintiff's instance:

"2.  The jury are instructed that if they find from a preponderance
of the evidence that A. S. Johnson, president of the Levee Board, for
cause demanding immediate attention, employed plaintiffs to do work
upon certain private levees owned by them to protect the levee then in
course of construction by said Levee District, and that the said plaintiffs
under employment, performed the labor sued for herein, then your verdict
as to such labor will be for the plaintiffs in such amount as said services
were reasonably worth.

"3.  The jury are instructed that if they find from the evidence, by
a preponderance thereof, that the plaintiffs herein made advances to
laborers in the employ of the defendant, at the request of the defendant,
then your verdict will be for the plaintiffs for amounts so advanced,
together with interest thereon at six per cent. per annum from the date
of such advances.

"4.  The jury are instructed that if they find from the evidence in
this case, by preponderance thereof, that board, rodman, axeman; teams

dict; and that can not be denied if the district is responsible for the work which he testifies he did under the circumstances detailed by him.

There is also an attack made upon some of the items author-ized·by the chief engineer; and in this connection an instruction was asked, which was refused by the court, to the effect that the chief engineer had no authority by virtue of such position to au-thorize or request the plaintiff to advance to employees or to laborers sums due them by the levee board and to bind the levee board to repay the plaintiffs the sums paid out on wages due the laborers by the levee board. But the testimony of Russell was that the work which he did was emergency work ordered by the president of the levee board, and that that work was carried out, as was all other work done at that time, under the supervision and directions of the chief engineer. Necessarily, it would fol-low, if the work was authorized and placed in charge of the chief engineer, that his action in furtherance of that work would be binding upon the district. Without the authorization of the presi-dent, certainly the chief engineer would not have this authority; but the plaintiff's case was based upon the directions of the presi-dent, and if that was given then the chief engineer in charge of it would be acting within the scope of his authority in carrying out the work, if it was within the power of the president to bind the district.

The only question which is of any moment in the case is the authority of the president of the levee board to bind the district

───────────

and hacks and labor for cutting levee right of way were furnished de-fendant by plaintiffs, and this at defendant's request, then, as to these items of account, your verdict will be for the plaintiffs in the amount such services and accommodations were then reasonably worth, less any amount or amounts they may have been paid by defendant as credit thereon."

And the following at defendant's instance:

"2. The jury are instructed that unless they believe from the evi-dence that the Levee Board of Red River District No. 1, through its president or duly authorized agent, ordered or requested the plaintiffs to advance the sums they claim to have paid for rodman, axeman, laborers, etc., no recovery can be had against the defendants for said sums, even though the jury may believe said sums or part of said sums were paid by the plaintiffs to such rodman, axeman, laborers, etc.

"4. The jury are instructed that, even though the plaintiffs paid certain laborers or employees of the Levee Board certain amounts on

for work done upon levees not owned or controlled by the district and upon private land and not upon right of way owned by it—in other words, upon private levees.   There is evidence to sustain the finding that work upon these private levees was necessary in order to protect the district from overflow and the levees of the district then in process of construction.   The authority of the president to act in these emergencies is broadly given in section sixteen.   The act evidently contemplated that the district should pay for work done in emergencies, as evidenced by the other section quoted.   It would be an idle power conferred upon the president if he could not authorize work to be done at places other than upon land to which the board had acquired right of way, or upon which it had constructed levees, if the other work was in fact necessary to protect the levee system and the country to be saved from overflow by the levee system.

The power conferred in cases of emergency was to protect the best interests of the levee district; and it can not be said that work done upon an old line of levees, behind which the new levees were being constructed, is beyond the power conferred.

Counsel for appellant has favored the court with a discussion of the *ultra vires* acts of officers of public corporations, but none of them are in point here, as the court regards the acts done by the president of the levee board as within the power conferred by the act.

Judgment affirmed.

---

memoranda showing the number of days work done by such laborer for the Levee Board of Red River Levee District No. 1, this does not entitle them to any recovery for such sums paid or advanced, unless it is shown said sums were paid on the order or at the request of the Levee Board through its president or duly authorized agent.

"5.  The jury are instructed that if you believe from the evidence that the levee on which work is claimed to have been done by the plaintiffs, W. H. and J. C. Russell, was on land belonging to said plaintiffs, and that the levee and right of way had not been donated to the defendants, or condemned by them at the time the work was done, and that the work was not done under instructions, or orders, of the president or engineer, or duly authorized agent of the defendant Levee Board, your verdict must be for the defendant as to the amount claimed for such work." (Rep.)